599 F.2d 1274
 Francis J. LITTLE and Regina Little, his wife, Appellants,
v.
DRESSER INDUSTRIES, INC., Successor to Manning, Maxwell &
Moore, Inc. (Dresser Crane & Hoist Div. and Dresser Crane
Hoist & Tower Div.) and Manning, Maxwell& Moore, Inc.
(Manning, Maxwell & Moore Crane & Hoist Div.), Appellees.
 No. 78-2236.
 United States Court of Appeals,
Third Circuit.
 Argued May 1, 1979.
Decided June 7, 1979.
 
 John B. Martin, James M. Peck (argued), Duane, Morris & Heckscher, Philadelphia, Pa., for appellants.
 Joseph H. Foster, Thomas R. Cunningham (argued), White & Williams, Philadelphia, Pa., for appellees.
 Before ADAMS, GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 In this appeal, plaintiff contends that two wrongs do not give a right entitling the defendants to joint tortfeasor status. We agree that a release settling a state claim for personal injuries and naming defendants in that suit as well as "any other person . . . chargeable with responsibility" does not benefit defendants in federal litigation over bodily injury incurred in a later, unrelated incident. Moreover, since the consideration recited in the release does not approximate the true value of both claims, the plaintiff is not barred in the federal suit from recovering damages for injuries sustained to the same part of the body as in the state court litigation. Accordingly, the summary judgment in favor of the defendants entered by the district court on the basis of the release will be vacated.
 
 
 1
 Plaintiff brought suit in the district court alleging that in September 1975 he incurred back injuries caused by defective equipment manufactured by the defendants.[1] Pending at the time was a state court suit[2] in which plaintiff also claimed back injuries from being struck by an automobile in August 1969. In a pretrial memorandum filed in the state court, plaintiff asserted a causal connection between the injuries received in 1969 and those suffered in 1975. After a release was executed, the state case was settled in 1978 and the defendants in the federal suit moved for summary judgment, claiming to be beneficiaries of the release.
 
 
 2
 Plaintiff moved for reformation of the release in the state court to make it clear that only the defendants in the automobile claim were absolved of liability. But before the state court could reach the reformation suit, the district court granted summary judgment for the products liability defendants, ruling that the plaintiff's recovery of the consideration stated in the release was redress for both claims. A few weeks later, the state court reformed the original release, limiting its effect to the automobile accident defendants. The district court, however, refused to reconsider its grant of summary judgment.
 
 
 3
 The plaintiff was represented by different counsel in the two suits and there is nothing in the record to suggest that there was communication between the lawyers about the pretrial statement in the state court or about the terms of the release executed in settlement of that claim. The pretrial statement itemized medical expenses and loss of wages from August 1969 through 1970 totaling $5,636.50. In addition, the memorandum alleged the plaintiff aggravated his pre-existing back condition at work in September 1975 and that as a result three intervertebral discs were removed and a spinal fusion was performed.[3] Medical expenses incurred after September 1975 were more than $16,000 and lost wages, exclusive of a claim for future losses were claimed to be $16,400.
 
 
 4
 The release recited a consideration of $14,000, named the defendants in the state court suit, and absolved
 
 
 5
 "any other person . . . corporation or other entity charged or chargeable with responsibility or liability . . . of and from all . . . liability . . . especially for personal injuries sustained in an accident which occurred on or about August 13, 1969, at or near Richmond Street . . . Philadelphia, Pennsylvania, as a result of which suit was instituted in the Court of Common Pleas, June Term, 1971, No. 4929."
 
 
 6
 In granting summary judgment, the district judge observed that in the state court the plaintiff had maintained that all of the injuries arising out of the 1975 products liability accident were proximately caused by, and therefore chargeable to, the automobile-collision defendants. Answering interrogatories in that suit, the plaintiff had said
 
 
 7
 "the incident of 9/13/75 (the products liability accident) aggravated a pre-existing condition which was caused by the accident of 8/13/69, that is the new conditions were superimposed on a pre-existing condition, and, therefore, the Defendant in this (automobile accident) case may be held responsible."The district court decided to take the plaintiff at his word, despite his questionable legal reasoning. Because the plaintiff had asserted that the injuries claimed in the products liability case were also the responsibility of the automobile defendants, a full settlement had been negotiated, and the release included "any other person" liable, the court concluded that there could not be a second recovery.
 
 
 8
 Before Pennsylvania adopted the Uniform Contribution Among Tortfeasors Act, Pa.Stat.Ann. tit. 12, §§ 2082-2089, Reenacted and now codified at 42 Pa.Cons.Stat.Ann. §§ 8321-8327 (Purdon 1978), the release of one joint tortfeasor released all. Although the statute changed that general principle,[4] in Hasselrode v. Gnagey, 404 Pa. 549, 172 A.2d 764 (1961), the state supreme court held that a release which specifically names one joint tortfeasor and "any and all other persons," discharges the liability of all joint tortfeasors to the injured party.
 
 
 9
 Were the federal defendants joint tortfeasors in the automobile accident underlying the state court suit, clearly the language in the general release executed by the plaintiff would bar recovery against defendants here. See Frank v. Volkswagenwerk, A. G., 522 F.2d 321, 328 (3d Cir. 1975). But as noted by Dean Prosser, the term "joint tortfeasor" is "one of those unhappy phrases of indeterminate meaning, whose repetition has done so much to befog the law." Prosser, Joint Torts and Several Liability, 25 Calif.L.Rev. 413, 413 (1937).
 
 
 10
 Various considerations have been proposed for determining a joint tort: the existence of a cause of action against each of two or more defendants; the presence of a like or common duty; whether the same evidence will establish liability against each; a single, indivisible injury to the plaintiff; identity of the facts as to time, place, and result; a direct and immediate injury, rather than a consequential one. Id. As early as Gallagher v. Kemmerer, 144 Pa. 509, 22 A. 970 (1891), the Pennsylvania Supreme Court pointed out the necessity for concerted action by wrongdoers to establish joint liability even though it might be difficult to separate the damages caused by independent tortfeasors. In that case, the court held that a release of one of two successive tortfeasors did not insulate the other in contrast to the common law rule extinguishing all liability when there was a release of one joint tortfeasor.
 
 
 11
 For administrative convenience, or to ensure the proper allocation of damages, a number of plaintiff's claims for substantially the same injury against more than one independent tortfeasor may be consolidated for trial. This joinder of parties a procedural device unfortunately, is often confused with the substantive liability of two or more defendants for the same tort. But the two concepts must be distinguished to avoid misapplication of the underlying principles of joint tort liability.
 
 
 12
 Section 1 of the Uniform Act, 42 Pa.Cons.Stat.Ann. § 8322 (Purdon 1978), defines joint tortfeasors as
 
 
 13
 "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them."
 
 
 14
 Although this definition speaks of joint Or several liability, leaving open the possibility that notions of joinder in addition to substantive liability may be included, it does require liability "in tort for the same injury to persons or property."[5]
 
 
 15
 Here, although it is true that plaintiff alleged injuries to the same part of the body in both suits, causal and temporal distinctions refute the argument there has been only one injury. There were two distinct incidents of alleged wrongdoing separated by a period of six years. No concerted action was asserted and there was no relationship between the defendants in the two claims which created a common duty. Using any test, it is clear that the defendants in the federal suit were not joint tortfeasors with those in the state action and the release did not preclude liability for the 1975 products liability claim.
 
 
 16
 The district court also relied upon another Pennsylvania doctrine, that of prohibiting double recovery for the same loss. In Thompson v. Fox, 326 Pa. 209, 192 A. 107 (1937), the court ruled that a plaintiff who had settled his bodily injury claim against a negligent motorist could not recover additional sums from a physician whose careless treatment aggravated the original injury. The court held that for the same injury, a plaintiff may have but one recovery, either in satisfaction of a judgment or as consideration for a release given to one of those liable to him, whether their liability be joint or successive.
 
 
 17
 The Thompson case, however, is of doubtful validity today. Although satisfaction of a judgment obtained in an adversary proceeding bars another recovery for the same injury, the receipt of consideration for a release no longer has the same preclusive effect. As we explained in Frank v. Volkswagenwerk, A. G., supra, a case may be settled and often is on the basis of factors other than value of the claim. Unavailability of witnesses, or the insurance coverage available to a defendant, for example, may be the decisive factors influencing a settlement. Blanchard v. Wilt, 410 Pa. 356, 188 A.2d 722 (1963), fairly analyzed, indicates that in the absence of an adversary judgment, Pennsylvania law requires a determination of whether the first proceeding resulted in an award representing the true value of the claim. We conclude that to the extent Blanchard is inconsistent with Thompson v. Fox, supra, it represents a change in Pennsylvania law. Blanchard emphasizes the distinction between release and satisfaction, and its reasoning is supported by authoritative commentary. See Prosser, Law of Torts § 49 (4th ed. 1971). Indeed, the same point was made in an earlier case, Hilbert v. Roth, 395 Pa. 270, 274-75, 149 A.2d 648, 651 (1959), and more recently, in Lasprogata v. Qualls, 397 A.2d 803 (Pa.Super.Ct.1979), the Pennsylvania Superior Court used the same approach.[6]
 
 
 18
 On the record presented to the district court for summary judgment, there was a failure to show that the consideration for the release represented the true value of plaintiff's claim even if it be assumed that only one indivisible injury was incurred. It seems clear to us, however, that there were in fact separate and distinct injuries despite the argument to the contrary exhibited in plaintiff's pretrial pleadings in the state case.
 
 
 19
 Accordingly, since the defendant here was not a joint tortfeasor and there is no showing that consideration received for the release included the true value of the federal court claim, summary judgment should not have been entered. Therefore, the judgment of the district court will be vacated. Both parties to bear their own costs.
 
 
 
 [1]
 The complaint alleges that while the plaintiff was using a hoist at his place of employment, the load slipped and struck him. Injuries to the cervical and lumbar spine as well as other parts of the body are claimed
 
 
 [2]
 Little v. P. Ingersoll and P. Ingersoll, Inc., No. 4929 (Phila.Ct.Com.Pleas, June Term, 1971)
 
 
 [3]
 In answer to interrogatories in the state court, plaintiff listed the following injuries caused by the automobile accident:
 "14. (a.) left cheek, top of head, diplopia, low back pain especially on the left, sacroiliac and lumbo sacral joint, left ankle abrasion, left temple, laceration of scalp, headaches, cervical and dorsal spines, thyroid, acute post traumatic strain and sprain of thoracic and lumbo sacral spines contusions of right knee, post traumatic anxiety reaction, thyroid condition.
 "15. Still have check-ups for thyroid condition, not much difficulty. Still have a problem with my low back, particularly if I get up or sit down too fast, it hurts at the coccyx area. Sitting in certain positions also gives me difficulty or if I pick things up too fast. Sitting down hard on a hard chair also causes pain."
 The pretrial settlement memorandum included as damages "aggravating conditions: Three herniated disks (Sic ) which have been removed one between L-4 and L-5 and two more. Also, a fusion has been done."
 In the district court, plaintiff listed the following injuries in response to interrogatories:
 "1. Herniated nucleus pulposus L-4-5 with left sciatica; left L-4 laminectomy with disectomy (Sic ) of the L-4-5 interspace performed 9/26/75; paresthesias (Sic ) along medial aspect of left knee and calf; acute lumbar strain; muscle spasm; decreased bilateral patellar and Achilles reflexes; herniated nucleus pulposus L-3-4 with left sciatica; left L3 laminectomy with discrectomy (Sic ) of the L3-4 intervertebral disc space performed 4/27/76; numbness of left leg; radiation of pain in lumbo-sacral spine down posterior aspect of right leg to sole of right foot; HNP L5 S1 with right sciatica; right L5 laminectomy with excision of the intervertebral disc between L5 and S1 performed 8/6/76; severe muscle spasms in lumbo-sacral spine area; MacElroy type bilateral lateral spinal fusion performed from L4 to L5 to S1 9/7/76; urinary tract infection.
 "2. (B)ack and hip pains continue, permanent loss of reflex control of left leg, complete numbness of left side hip to buttocks, restrictions of motion."
 
 
 [4]
 Section 4 of the Uniform Act, 42 Pa.Cons.Stat.Ann. § 8326 (Purdon 1978) provides that
 "(a) release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."
 
 
 [5]
 The definition of and even the term "joint tortfeasors," included in the 1939 Uniform Act upon which the Pennsylvania statute was patterned, was eliminated in the revised Uniform Act of 1955. The revised section speaks instead of
 "two or more persons (who) become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death."
 As revealed in the Commissioners' Comments, the term was considered not indispensable to the Act and confusing in light of narrow joinder rules in some jurisdictions. 9 U.L.A. 57, 63-64 (West 1975).
 
 
 [6]
 The Lasprogata case involved the question whether the right of contribution existed between the defendant vehicle operator and a physician who allegedly rendered negligent treatment of injuries sustained in an automobile accident. The court ruled that the doctor and additional defendant were not joint tortfeasors, their acts being severable in time, neither having the opportunity to guard against the other's acts, and each breaching a different duty owed to the plaintiff. 397 A.2d at 805-06. There, too, the court noted that plaintiff had executed a release only as to the vehicle operator and only for the injuries he caused