Stanley J. SOCHANSKI

v.

SEARS, ROEBUCK & COMPANY.

Civ. A. No. 75–2903.

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1980.

See also D.C., 504 F.Supp. 182.

August J. Lacko, Barry S. Lyons, Philadelphia, Pa., for plaintiff.

John J. O'Brien, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

This case involves a product liability personal injury claim wherein a jury awarded the plaintiff the amount of $395,000.00 in damages. On May 15, 1979, however, the Court granted the defendants' Motion For Judgment N.O.V. and thereafter an appeal was taken. During the pendency of the appeal, one (1) of the original defendants, Goodyear Tire & Rubber Company [hereinafter "Goodyear"], negotiated and entered into a settlement with the plaintiff wherein a joint tortfeasor release was executed. A non-party,[1] Geneva Metal Wheels Company [hereinafter "Geneva"], was also apparently involved in settlement discussions and additionally enjoyed the benefits of a release executed in its favor. The Court of Appeals for the Third Circuit reversed and remanded the case for the reinstatement of the jury's verdict on May 2, 1980. Upon reinstatement of the verdict, the Court was eventually requested to resolve an issue concerning the status of Sears and Goodyear; i. e., whether they were joint tortfeasors or were primarily and secondarily liable, respectively. After the issues were

---

1. Geneva was once a party to this action at the behest of the defendant Sears and via a Third-Party Complaint filed on March 10, 1976. A default was entered against Geneva on May 21, 1976 for its failure to plead, appear or otherwise defend. Subsequently, the default was opened or removed and Geneva actively participated in the case until April 13, 1978 when the Third-Party Complaint was withdrawn. *See generally Sochanski v. Sears, Roebuck & Company, et al.*, No. 75–2903 (E.D.Pa., June 12, 1980); Docket Entry No. 148.

briefed in the context of a defendant's Motion For Judgment N.O.V., the Court held that the two (2) companies were joint tortfeasors at the time of judgment and, thus, the defendant's motion was denied. *Sochanski v. Sears, Roebuck & Company*, 504 F.Supp. 182 (E.D.Pa.1980). This decision has been appealed and the defendant has been permitted to post a supersedeas bond in an unspecified amount. Presently before the Court are two (2) applications, considered as made in the alternative, concerning bond procedures and bond amounts.

When the plaintiff was originally contesting whether the defendant Sears should be permitted to post a supersedeas bond at all, an alternative was proposed wherein the plaintiff would post a bond in the amount of judgment payable to the defendant Sears in the event its appeal was successful thus permitting the plaintiff to execute on the judgment.[2] The Court rejects the plaintiff's position because it is obviously beyond the comprehension of F.R.Civ.P. 62 which provides in pertinent part as follows:

> (d) Stay Upon Appeal. When an appeal is taken *the appellant by giving a supersedeas bond* may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. *The stay is effective when the supersedeas bond is approved by the court.* (Emphasis added).

The clear language of the rule makes cognizable the posting of a supersedeas bond by only a party taking an appeal—"the appellant." Courts have consistently recognized this manifested intent of the rule when enunciating the principle that the procedure envisions maintenance of the *status quo*. *See generally Teleflex Industrial Products, Inc. v. Brunswick*, 294 F.Supp. 256 (E.D.Pa.

1968). The only viable deviation from this perceived mandate would occur when an appeal is either spurious or dilatory. In that event, permission to post a supersedeas bond would be denied at the onset. Although the Court will not divulge any opinion concerning the merits of the appeal, a conclusion that it is neither spurious nor dilatory is warranted.

The denial of the plaintiff's first application requires the Court to proceed to the merits of the second or alternative application in which a unique issue is presented. The issue arises from a peculiar set of factual circumstances that essentially makes it incumbent upon the Court to decide whether or when a party may be characterized a joint tortfeasor as it relates to the ultimate satisfaction of a judgment.[3] The number of original parties which may be considered joint tortfeasors is extremely important to the final resolution of this case as well as to the resolution concerning the proper amount of the supersedeas bond.

For purposes of this case, a joint tortfeasor "means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." Uniform Contribution Among Tort-feasors Act, Pa.Cons.Stat. Ann. tit. 42, § 8321 (Purdon 1980). In the present case, the following occurred procedurally. The plaintiff's Complaint named Sears and Goodyear as original defendants. Thereafter, Sears filed a Third-Party Complaint against Geneva. The eventual trial was bifurcated and a jury returned a verdict finding Sears, Goodyear and Geneva liable. On April 14, 1978, the trial resumed for consideration of the damages portion of the case. Additionally and most importantly, Sears withdrew its Third-Party Com-

---

2. Neither case precedent nor determined logical reasoning was advanced in support of this alternative procedure. Indeed, after a cursory inspection of case law, the Court was unable to locate anything of precedential value supportive of the plaintiff's position.

3. The issue as phrased bears a direct relationship to the proper amount of the supersedeas bond required to be posted by the defendant Sears. The amount of the bond is the focus of the dispute presently before the Court. *See* note 4 and accompanying text *infra*.

plaint against Geneva.[4] A judgment in the amount of $395,000.00 was ultimately recorded against Goodyear and Sears. The question thus presented forefront is whether the withdrawal of a claim against a third party already declared liable (but before judgment) permits the characterization of that party as a joint tortfeasor. For the reasons that follow, the Court holds that such a characterization is proper.[5]

In *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956), the Pennsylvania Supreme Court was confronted with the issue whether an additional defendant was entitled to be eliminated from trial before it was determined whether she was a joint tortfeasor. The additional defendant had argued that a release was executed in her behalf as consideration for settlement and thus that the plaintiff no longer had an assertable claim. The original defendant, however, contended that the additional defendant should be retained in the case until the jury could determine joint tortfeasor status via a liability verdict. The Supreme Court held that a definite interest vested with the original defendant as respects a determination of joint tortfeasor status inasmuch as his ultimate payment of damages would be guided by a *pro rata* assessment. *See also Hanahan v. McClatchy*, 384 F.Supp. 16, 18 n.1 (E.D.Pa.1974); *Dice v. Marsolino*, 14 D. & C.2d 457 (Pa.C.P.Fay.1958). By analogous application to the present case, a party may be determined to be a joint tortfeasor through a verdict of liability notwithstanding the fact that it was not considered in the determination of the amount of damages. In *Davis* and its progeny, the elimination from consideration in arriving at an amount of damages only occurred as a result of the execution of a release before

trial. In the present case, the elimination occurred as a result of the withdrawal of the Third-Party Complaint against Geneva. The Court thus determines that Geneva is a joint tort-feasor along with Sears and Goodyear.

■ The determination of the existence of three (3) joint tortfeasors specially guides the Court's assessment of an eventual damages payment plan. For the present, it also aids the Court in its determination of the proper amount of the supersedeas bond. On November 3, 1980, Sears posted a $237,-000.00 bond in favor of the plaintiff which reflects approximately one-half of the verdict, plus interest. The Court finds this amount entirely sufficient but unnecessarily excessive.

■ The Uniform Contribution Among Tort-feasors Act, Pa.Cons.Stat.Ann. tit. 42, § 8326 (Purdon 1980), provides:

*A release by the injured person of one joint tort-feasor,* whether before or after judgment, *does not discharge the other tort-feasors unless the release so provides,* but *reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.* (Emphasis added).

According to the statute, Sears would thus be liable to the plaintiff for the amount of the verdict less $100,000.00 paid in settlement by Goodyear and Geneva or its one-third *pro rata* share of the verdict, whichever is less. The Court is cognizant that had the language of the Joint Tort Feasor Release provided otherwise, Sears may have been liable to the plaintiff for the amount of the verdict, less $100,000.00 paid in set-

4. The Court is presently unsure of the reasoning or purpose behind the dismissal of Geneva but speculates that some corporate connection existed between Goodyear and Geneva. To carry the hypothesis one step further, the Court would consider it possible that the defendant Sears saw no necessity in holding Geneva because of the continued presence of Goodyear—the primary "pocket" so to speak representing itself and possibly Geneva. This conjecture engaged in by the Court bears no relation to the ultimate disposition of the case. The perti-

nent fact is that Geneva was no longer a party in the case at the time of judgment but was, however, determined to be a liable party.

5. The term "joint tortfeasor," as defined in the Uniform Contribution Among Tort-feasors Act, Pa.Cons.Stat.Ann. tit. 42, § 8322 (Purdon 1980), is to be defined "quite broadly." *Rutherford v. Gray Line, Inc.*, 615 F.2d 944, 948 (2d Cir. 1980). *See also Little v. Dresser Industries, Inc.*, 599 F.2d 1274, 1277–78 n.5 (3d Cir. 1979).

tlement by Goodyear and Geneva. Sears would have thus had to institute a separate action for contribution against Goodyear and Geneva for the balance of each of their one-third *pro rata* shares.[6] *See, e. g., Nationwide Mutual Insurance Company v. Philadelphia Electric Company*, 443 F.Supp. 1140 (E.D.Pa.1977). In the present case, the clear language of the settlement manifests the intent that the $100,000.00 paid by Goodyear and Geneva was in settlement for a release from liability for each of their one-third *pro rata* shares.[7] Inasmuch as Sears' one-third *pro rata* share is far less than the amount of judgment less $100,-000.00 paid in settlement by Goodyear and Geneva, the amount mathematically determined from the former schedule is the extent of its liability to the plaintiff for damages. *See Smith v. Fenner*, 399 Pa. 633, 161 A.2d 150 (1960).

An appropriate Order will be entered.

**6.** Two (2) conditions must exist before the right to contribution arises: 1. One (1) joint tortfeasor has discharged the common liability or paid more than his *pro rata* share and 2. that the liability of the other joint tortfeasor(s) to the injured person(s) has been extinguished by the settlement. *Swartz v. Sunderland*, 403 Pa. 222, 225, 169 A.2d 280 (1961).

**7.** The Joint Tort Feasor Release provides, in pertinent part, as follows:

Stanley Sochanski agrees that in the event that other parties are responsible to him as joint tort feasors with Goodyear, Geneva and/or Travelers as the result of the incident above described, the damages recovered against all other joint tort feasors in any pending or future cause of action or lawsuit arising out of the same incident shall be and are reduced to the extent of the pro rata share of said damages which Goodyear, Geneva and/or Travelers, except for this Release, would otherwise be liable to pay.

If it should appear or be adjudicated in any suit, action or proceeding that Goodyear and/or Geneva and/or Travelers and others were jointly liable with respect to the aforesaid injuries and damages, in order to save Goodyear, Geneva and Travelers harmless, Stanley Sochanski, as further consideration for the payment recited above will satisfy any judgment, award or decree in which

there is such a finding of adjudication to the extent of the liability of Goodyear and/or Geneva and/or Travelers for contribution should it be determined that such liability exists. The parties to this Release recognize that as the result of the accident involving Stanley Sochanski that there exist potential claims or other persons and entities against Goodyear and/or Geneva and/or Travelers including the claims of Sears, Roebuck & Company, Palmer Tire Company and the Chubb Pacific Indemnity Group.

. . . . .

In view of the express objective of this Release, Stanley Sochanski agrees that in the event that he secures a verdict and/or judgment against Sears, Roebuck & Company or any other person or entity for which Sears, Roebuck & Company or any other person or entity secures a verdict and/or judgment of indemnity against Goodyear, and/or Geneva, and/or Travelers that he will mark the verdict and/or judgment in his favor satisfied as to the person or entity against whom he obtains the verdict or judgment so as not to expose Goodyear, Geneva nor Travelers to any verdict or judgment in the excess of the amount agreed upon as the consideration for the execution of this Release.