**Stanley J. SOCHANSKI, Appellant in No. 82–1036,**

v.

**SEARS, ROEBUCK AND COMPANY, Appellee and Cross-Appellant in No. 82–1037.**

**and**

**The GOODYEAR TIRE AND RUBBER CO.**

v.

**John F. SOLOMON, Jr., Palmer Tire Company, Geneva Metal Wheels Co.**

**Nos. 82–1036, 82–1037.**

United States Court of Appeals, Third Circuit.

Argued Aug. 3, 1982.

Decided Sept. 21, 1982.

August J. Lacko (argued), Philadelphia, Pa., for appellant in No. 82–1036 and cross-appellee in No. 82–1037.

John J. O'Brien, Jr. (argued), Philadelphia, Pa., for appellee in No. 82–1036 and cross-appellant in No. 82–1037.

Before ALDISERT and WEIS, Circuit Judges and RE,* Chief Judge.

### OPINION OF THE COURT

WEIS, Circuit Judge.

In this products liability case, we must determine whether a pro rata release naming the manufacturer of a defective tire also discharges the retailer that sold the garden cart on which the tire was mounted. We conclude that, as to the tire manufacturer, the retailer is only secondarily liable. Therefore, unless another non-released primary tortfeasor is implicated, judgment should be entered for the retailer. The record, however, is unclear whether the wheel manufacturer also furnished a defective product and we remand for a determination of that factual issue.

Plaintiff Stanley Sochanski was severely injured when a pneumatic tire exploded while he was repairing it. He brought suit under section 402A of the Restatement (Second) of Torts against Sears, Roebuck & Co., the vendor of the assembled cart, and Goodyear Tire and Rubber Co., the manufacturer of the tire. Sears, in turn, filed a third-party complaint against Geneva Metal Wheels Company, the alleged manufacturer of the wheel on which the tire was mounted.[1] Jurisdiction is based on diversity of citizenship and the substantive law of Pennsylvania governs.

In the liability phase of a bifurcated trial the jury found, in answers to interrogato-

---

* Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

1. The production history of the garden cart is as follows: Goodyear manufactured the tire, which was mounted on a wheel by the wheel manufacturer. The "wheel unit" (tire and wheel) was then purchased by the Palsgrove Manufacturing Co. which used the wheel unit in its assembly of the garden cart. The assembled cart was then sold to Sears. A detailed account of the facts leading to plaintiff's injury is found in our previous opinion in this case. *Sochanski v. Sears, Roebuck & Co.*, 621 F.2d 67 (3d Cir. 1980).

ries, that the tire was defective and unreasonably dangerous when it left Goodyear's hands, and the defect was the proximate cause of the accident. Similar findings were made with respect to the "wheel unit," which was defined as the Goodyear tire mounted on the cart wheel.

Before the interrogatories were submitted to the jury, Sears moved to withdraw its third-party complaint against Geneva. Although the trial court did not enter an order on the motion, Geneva was not mentioned in the charge to the jury or in the special interrogatories. In addition, we find no record of any summation being delivered on behalf of Geneva. Nevertheless, after the jury's verdict, the court deputy clerk made the following entry on the court minutes:

> "JURY VERDICT ON ISSUE OF LIABILITY: Favor of plff. & against defts, Sears, Roebuck & Co. and the Goodyear Tire & Rubber Co. & 3rd-pty deft. Geneva Wheel Co. Trial resumed on the issue of Damages."

No order of the district judge in conformance with this entry is in the record.

After the trial on damages, the jury awarded the plaintiff $395,000 and judgment was entered in that amount against Sears and Goodyear. On post-trial motions, the district court granted judgment n.o.v. in favor of the two defendants on the ground that the plaintiff had failed to negate reasonable secondary causes for the tire's explosion. 477 F.Supp. 316.

Plaintiff then appealed to this court but, before argument, executed a pro rata release in favor of Goodyear and Geneva for a consideration of $100,000.[2] The appeal against Goodyear was then withdrawn. This court, concluding that the plaintiff had met his burden of proof, reversed and directed the jury's verdict to be reinstated. The court observed that Goodyear had reached a settlement with the plaintiff but stated: "We express no opinion about the effect of the settlement on Sears because neither Sears, Goodyear nor Sochanski has presented the issue to us." 621 F.2d at 69 n. 1.

On remand, the district court reinstated the verdict in favor of plaintiff and against Sears and Goodyear. Sears then moved for judgment n.o.v. contending that it was only secondarily liable and was discharged from liability by the release given to Goodyear. The district court rejected this argument, reasoning that because the case was tried under a "malfunction" rather than a specific defect theory, no infirmity was shown and, therefore, primary liability could not be assigned to Goodyear alone. 504 F.Supp. 182. Consequently, the court ruled that Sears was not secondarily but primarily liable with Goodyear as a joint tortfeasor.

In a subsequent opinion determining the appropriate amount of a supersedeas bond, the district court stated that the "jury returned a verdict finding Sears, Goodyear and Geneva liable." *Sochanski v. Sears, Roebuck & Co.,* 504 F.Supp. 187, 188 (E.D. Pa. 1980). Accordingly, the court found all three defendants jointly liable and held

---

**2.** Under the Pennsylvania Uniform Contribution Among Tortfeasors Act, 42 Pa. Con. Stat. Ann. §§ 8321–27 (Purdon Supp. 1982), a release in favor of one joint tortfeasor does not discharge another tortfeasor unless the release so provides. *Id.* at § 8326. To recover the remaining portion of the claim from any other party, however, the plaintiff must establish that the non-released party is a joint tortfeasor. *Little v. Dresser Industries, Inc.,* 599 F.2d 1274 (3d Cir. 1979).

If joint tortfeasor status is established, then the non-released party is entitled to have the claim against him reduced in accordance with the payments and terms of the release. If the consideration is less than the released party's

share of liability, then the obligation of the non-released party is reduced by a pro rata share. If the released party pays more than his pro rata share, then the non-released party is entitled to have the claim reduced by the total amount of consideration paid under the release. 42 Pa. Con. Stat. Ann. § 8326. The released party would then have a right of contribution against the other party for the amount paid in excess of a pro rata share, since that much of the non-released party's liability would have been extinguished by the release. *Id.* at § 8324(c); *see, Castillo v. Roger Const. Co.,* 560 F.2d 1146 (3d Cir. 1977); *Mong v. Hershberger,* 200 Pa.Super. 68, 186 A.2d 427 (1962), *allocatur refused* (1963).

Sears accountable for one-third of the total verdict. Goodyear and Geneva were absolved because the $100,000 settlement was made on behalf of both companies.[3]

On appeal, the plaintiff contends that because he withdrew his appeal against Goodyear in the first appearance before this court, the judgment n.o.v. in its favor in the district court remained in effect. According to the plaintiff, that judgment established that he had failed to prove a case against Goodyear and, therefore, its payment of the agreed settlement was that of a mere volunteer. *See Slaughter v. Pennsylvania X-Ray Corp.,* 638 F.2d 639, 642 (3d Cir. 1981). It follows, says the plaintiff, that Sears is now liable for the full amount of the judgment.

We reject this contention. After this court had ordered that the jury's verdict be reinstated, the district court entered judgment on the verdict in favor of the plaintiff and against both Sears and Goodyear. Neither plaintiff nor Goodyear took any steps in the district court or in this court to challenge that action.

We question whether the plaintiff would have been successful in any such attempt. This court decided that the district court had erred in concluding that the plaintiff had not negated abnormal use and reasonable secondary causes. That determination applied equally to Sears and Goodyear. The plaintiff did prove a case against Goodyear and, were it not for the erroneous determination of the district court, the verdict against Goodyear would not have been disturbed.

■ A court of appeals has the power to reverse a judgment of the district court even in favor of parties who do not participate in the appeal. *In Re Barnett,* 124 F.2d 1005 (2d Cir. 1942); *see also Kicklighter v. Nails By Jannee, Inc.,* 616 F.2d 734 (5th Cir. 1980) (appeal by third-party defendant held to constitute appeal by defendant where case was reversed for error in plaintiff's action against defendant). As the court

said in *Hysell v. Iowa Public Service Co.,* 559 F.2d 468, 476 (8th Cir. 1977), "[t]his Court acquired jurisdiction to reverse or modify the entire judgment, even as it applied to non-appealing parties.... [R]ules requiring separate appeals by other parties are rules of practice, which may be waived in the interest of justice where the circumstances so require." (citations omitted). *See also Arnold's Hofbrau, Inc. v. George Hyman Construction Co.,* 480 F.2d 1145 (D.C. Cir. 1973); 15 C. Wright & A. Miller, Federal Practice and Procedure § 3904 (1966). Although the reversal of a judgment favoring a non-appealing party is not as frequent as the circumstance in which the non-appealing party benefits, it nevertheless may be required in the interest of justice.

In the case at hand, the party affected did not waive a right to appeal. Having a judgment in its favor, Goodyear could not have taken an appeal. Moreover, it has not been harmed by the reversal of the judgment as a whole and has not complained about the record as it now stands.

■ Goodyear is protected from further liability on the judgment by the release. It is unlikely that it will be required to incur any further litigation expense by participation in further proceedings in the district court. However, even if Goodyear were required to take part in future proceedings, that would not constitute a reason for restricting the scope of the judgment. Under Pennsylvania law, a person may be required to remain a party to a lawsuit for the purpose of determining joint or sole liability, even though the individual has received a joint tortfeasor release. *Slaughter v. Pennsylvania X-Ray Corp.,* 638 F.2d at 644; *Davis v. Miller,* 385 Pa. 348, 123 A.2d 422 (1956). From that standpoint, therefore, Goodyear is in the same position as it would have been had it secured a pro rata release before suit was filed.

---

**3.** Strictly speaking, only the denial of Sears' motion for judgment n.o.v. is before us on this appeal. The action of the district court in finding Geneva to be a joint tortfeasor, however, does affect the outcome of the case and must be discussed.

On the other hand, if the judgment were not reinstated as to both defendants, the plaintiff's and Sears' respective rights would be uncertain because they are dependent upon an adjudication of Goodyear's liability. To adopt plaintiff's position would require us to either direct that the allocation of responsibility between Sears and Goodyear to be determined in another fact finding procedure or hold that Sears is precluded from contesting its liability as a result of the pre-argument maneuvering by the plaintiff in the first appeal. Neither course is necessary or satisfactory. The plaintiff may not destroy Sears' rights arising from an adjudication of Goodyear's liability by choosing to appeal only the judgment in favor of Sears.

■ When the potential liability of one defendant is dependent on an adjudication of another defendant's liability and an error in the district court applies equally to both defendants, the court has the power to reverse as to both defendants. In these circumstances, it would be unjust to do otherwise; the plaintiff cannot insulate the error as to one defendant by withdrawing his appeal. In sum, we conclude that this court properly could and did reverse the judgment in favor of both Sears and Goodyear on the first appeal.

■ We must next clarify the "malfunction theory," a matter misunderstood by counsel in this case. Under Pennsylvania law, the application of a malfunction theory provides a means of proving a defect, but does not alter the basic requirements of section 402A of the Restatement (Second) of Torts. *See Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 329, 319 A.2d 914, 920 (1974); *Mac Dougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676, 678–80 (1969).

■ Evidence of a malfunction, then, is not a substitute for the need to establish that the product was defective. A malfunc-

tion is evidence that a defect existed and eliminates only the need to identify a specific failure. "[M]alfunction may itself, in the absence of abnormal use and reasonable secondary causes, be sufficient *evidence* of a defect to make the existence of a defect a jury question." *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979). (emphasis supplied.) Thus, even when a case is tried under a malfunction theory, recovery rests on a finding that a defect did exist.

When this case was before us the first time, we reinstated the jury verdict because the plaintiff, through evidence of a malfunction, had established that there was a defect. The flaw was not a generalized one to the cart as a whole, but, as the jury's answers to the interrogatories demonstrate, was confined to the tire and arguably to the "wheel unit."[4] There was no evidence that Sears in any way modified the tire before it sold the cart.

■ Goodyear, because it manufactured the defective tire, is primarily liable. Sears acted only as a conduit between Goodyear and the purchaser of the cart and for that reason is only secondarily liable. The malfunction theory and the circumstances of this case do not alter the basic doctrine of primary-secondary liability explained in *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969); *see also Tromza v. Tecumsch Products Co.*, 378 F.2d 601 (3d Cir. 1967), (where party's liability arose only because of its failure to discover or remedy a defect created by one primarily liable, its liability is secondary); *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). Consequently, Sears' liability for any misfeasance on Goodyear's part is discharged by the release in favor of Goodyear.

Thus far, the relationship between Sears and Goodyear is clearly established. The interrogatories directed to the "wheel unit," however, reveal gaps and inconsistencies in

---

**4.** Interrogatory 1 read: "Was plaintiff's exhibit 1 [the tire] in a defective condition when it was sold by defendant Goodyear?" The jury answered, "Yes."

Interrogatory 4 read: "Was the wheel unit, that is, plaintiff's exhibit 1 [the tire] mounted on plaintiff's exhibit 3 [the wheel] in a defective condition when sold by defendant Sears?" Answer, "Yes."

the record which we cannot resolve. The interrogatories are patently ambiguous. Once the jury found that the tire was defective, it could logically conclude that the tire's attachment to the wheel made the "wheel unit" defective, even though the wheel itself was in perfect condition. Or, the jury may have concluded that the wheel and the tire were each independently flawed. Either interpretation is reasonable and consistent with the court's charge to the jury.

If the tire alone was defective, then Goodyear is the sole primary tortfeasor. But, if the wheel itself was defective, then its manufacturer would also be a primary tortfeasor, jointly liable with Goodyear, and Sears would be secondarily liable for both manufacturers. There is nothing in the record to guide us in determining what the jury intended by its answers and we are not permitted to speculate.

At this point, whether Geneva had any role in the construction of the garden cart becomes significant. If Geneva was the manufacturer of the wheel, then the release naming it would determine the outcome here. Once again, however, the record is inadequate.

Geneva was one of several suppliers of wheels for the assemblers of the garden carts. There was testimony from a Geneva employee that the unit involved in this case was not manufactured by his company. One of plaintiff's witnesses could not identify which supplier had provided the wheel involved in this case, but did testify that the Geneva wheels were always equipped with Goodyear tires, while those supplied by other wheel manufacturers came with tires made by other companies. Thus, there was a conflict in the evidence as to the identity of the wheel manufacturer, an issue never submitted to the jury.[5]

There is a serious inadequacy in the record as it stands because there has been no adjudication of Geneva's liability. The Clerk's minute entry in the district court indicating otherwise is clearly mistaken. The jury did not bring in a general verdict on liability, but only answered interrogatories that did not address the question of Geneva's role, if any, in the incident.

Thus, two critical factual issues have not been resolved. First, whether the wheel itself was defective, and, if so, whether Geneva was the manufacturer. Depending on the answers to these questions, the pro rata release would require one of the following rulings:

1. If the wheel is not defective within the meaning of section 402A, then Goodyear is the sole primary tortfeasor and Sears is only secondarily liable. In that event, judgment should be entered in favor of Sears since its responsibility is discharged by the pro rata release running in favor of Goodyear.

2. If the wheel is found to be defective and Geneva was the manufacturer, then again judgment must be entered in favor of Sears since the release in favor of both primary tortfeasors, Goodyear and Geneva, would also completely satisfy Sears' secondary liability.

3. If the wheel is defective and Geneva was not the manufacturer, then Sears is liable for one-half of the verdict of $395,-000. This result follows because in that scenario there are two primary tortfeasors, Goodyear and the unknown wheel manufacturer. Sears' secondary responsibility for Goodyear's liability has been discharged by the release. Sears' secondary liability for the unknown wheel manufacturer's dereliction, however, is not extinguished by the release and, therefore, remains available to satisfy half of the plaintiff's claim.[6]

---

5. It is understandable that the trial court and the parties saw no need at trial to determine whether Geneva was the manufacturer of the wheel. The plaintiff had not filed a claim against Geneva and Sears had made a motion to withdraw its third-party complaint against the company. As a practical matter, the plaintiff had two solvent defendants and had no reason to concern himself with Geneva. The question of Geneva's liability became important only after the pro rata release was given.

6. Sears' right to recover from the wheel manufacturer, if its identity is discovered, is not a matter presently involved in this litigation.

In sum, the record, as it stands, establishes that Goodyear's liability has been discharged by the release. For the purpose of interpreting the effect of the release, the status of Goodyear as a joint tortfeasor and the extent of plaintiff's damages have been adjudicated. Remaining for disposition are the questions of whether the wheel was defective and, if so, who was its manufacturer. These matters must be determined in the first instance in the district court. The judgment of the district court will be vacated and the case will be remanded to the district court for resolution of the factual issues, application of the pro rata release, and entry of an appropriate judgment in accordance with this opinion.

See *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.,* 372 F.2d 18 (3d Cir.