471 P.2d 682

**Sam FRANCIS, Plaintiff-Appellee,**

v.

**Stephen David JOHNSON and Hensley S. Johnson, Defendants and Third-Party Plaintiffs-Appellants,**

v.

**Robert F. HARRISON, Third-Party Defendant-Appellee.**

No. 423.

Court of Appeals of New Mexico.

June 5, 1970.

Quincy D. Adams, Adams & Foley, Albuquerque, for appellants.

E. Douglas Latimer, McAtee, Marchiondo & Michael, Albuquerque, for appellee.

**650**

## OPINION

SPIESS, Chief Judge.

This is an automobile accident case. Anthony Francis (Anthony), minor son of plaintiff-appellee, Sam Francis (Sam), was injured while a passenger in an automobile driven by defendant-appellant, Stephen David Johnson (Stephen), minor son of defendant-appellant, Hensley S. Johnson (Hensley). The car involved and being driven by Stephen was owned by his father, Hensley, and maintained for the use of his family.

It appears that Stephen, while driving the automobile upon a street in the City of Albuquerque, participated, or undertook to participate in a "drag" race with Robert F. Harrison (Robert). As a result of this activity and while driving at a high rate of speed, the vehicle operated by Stephen collided with a truck resulting in the injuries to Anthony.

The appeal is from a judgment upon a jury verdict awarding damages to Sam, individually, for medical expenses resulting from the injury to his son, Anthony, and further damages to Sam as next friend of Anthony on account of injuries received by him. The judgment, pursuant to the verdict, likewise effected a dismissal of the third party action against Robert.

Issues presented on appeal concern: (1) the denial of a motion for a directed verdict and the denial of a motion for judgment notwithstanding the verdict; (2) a ruling relating to cross-examination; (3) the denial of a motion for a new trial based upon excessiveness of the verdict with respect to Anthony's injuries, and (4) the court's refusal of certain requested instructions.

Defendants Stephen and Hensley first urge that the evidence establishes assumption of risk as a matter of law upon the part of Anthony and for that reason the trial court erred in not sustaining their motion for a directed verdict and in denying their motion for judgment notwithstanding the verdict.

Assumption of risk is a defense to a claim by a passenger against the driver of an automobile. Hughes v. Walker, 78 N.M. 63, 428 P.2d 37 (1967). For the doctrine to apply, it must be shown (1) that a dangerous situation existed, (2) that the plaintiff knew of such dangerous situation, and (3) that the plaintiff voluntarily exposed himself to the danger and was injured thereby. See Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P. 2d 625 (1967).

It is a well-settled principle of law that unless the evidence is so clear and undisputed that reasonable men can draw but one conclusion, the defense of assumption of risk is a factual question to be resolved by the trier of facts. Padilla v. Winsor, 67 N.M. 267, 354 P.2d 740 (1960).

In passing upon defendant's motion for a directed verdict the court must view plaintiff's evidence together with all reasonable inferences that could reasonably be drawn therefrom in a light most favorable to plaintiff disregarding all evidence to the contrary. Tabet v. Sprouse-Reitz Co., 75 N.M. 645, 409 P.2d 497 (1966).

Upon motion for judgment notwithstanding the verdict, the court is governed by the same rules which apply to a motion for directed verdict. Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

Applying these principles to the facts disclosed by this record we conclude that the trial court properly refused to take the case from the jury at the conclusion of plaintiff's evidence and properly denied the motion for judgment notwithstanding the verdict.

At the time of the accident involved Anthony was sixteen years of age and had known Stephen for some eight years. On the day of the accident Stephen was driving his father's car for the purpose of making delivery of a radio for repair to a particular place and returning a musical instrument to its owner. He invited Anthony to accompany him. After delivering the radio the

boys were proceeding along Palomas, a street in the city of Albuquerque, to deliver the musical instrument. Upon arriving at a stop sign at the intersection of Palomas and Ross they encountered a car being driven by Robert, which was stopped at the intersection. Stephen was driving northbound in his proper lane of traffic before reaching the intersection, but as he approached the stop sign he swerved over on the wrong or left side of the street and stopped next to the car being driven by Robert. Stephen asked Anthony to roll down the window and began a conversation with Robert. The conversation concerned drag racing. As stated, the race, or attempt to race ensued resulting in the injuries to Anthony.

Defendants argue that the evidence establishes as a matter of law that (1) Anthony was aware of the dangers incident to racing upon a public street, (2) he participated in the start of the race by lowering the car window so that Stephen and Robert could talk to each other, and (3) Anthony knew that Stephen intended to race and had sufficient time, five seconds, to withdraw from the car. It is undisputed that Anthony was aware of the dangers incident to racing upon a public street. It is further undisputed that Anthony did lower the car window at Stephen's request so as to permit Stephen to converse with Robert. Anthony, however, testified that he did not know what Stephen planned to discuss with Robert when asked to roll down the window. By lowering the car window under these circumstances Anthony could not have knowingly participated in the start of the race, nor accepted the risk. See Hughes v. Walker, supra.

Contrary to defendant's contention the evidence does not conclusively establish that Anthony had five seconds of time within which he could leave or withdraw from the car after he became aware that Stephen intended to race.

Anthony testified that while Stephen and Robert were talking about drag racing he did not believe they would race because of the very narrow and crowded streets, and that they revved their engines for five seconds or less and took off. This testimony presented an issue as to whether Anthony could have opened the door and withdrawn from the car before it began to move. The defense of assumption of risk was properly submitted to the jury and after the issue had been resolved against defendant the trial court correctly declined to overturn the verdict.

■ On cross-examination defendants' counsel asked Anthony the following question:

"Q You know how long it takes to open the door and get out? Five seconds would be plenty of time, wouldn't it?"

Objection was interposed by plaintiff's counsel in the following language:

"If it please the Court, this is argumentative."

The Court then stated:

"I think that is argumentative. * * * It is up to the Jury. The Jury knows what five seconds is and what he said and what the question was."

The court's statement was treated as sustaining the objection to the question. Defendants contend that they should have been permitted to so interrogate Anthony upon cross-examination and the ruling precluding the question was prejudicial. We disagree. The question was purely argumentative calling for the witness's conclusion as to whether five seconds was adequate time within which to leave the vehicle under the circumstances.

■ The scope and extent of cross-examination rests largely in the sound discretion of the trial court. State v. Sanchez, 79 N.M. 701, 448 P.2d 807 (Ct.App.1968). An abuse of judicial discretion is not shown. Furthermore, the facts were before the jury from which it could reach its own conclusion relating to Anthony's opportunity to leave the car.

Defendants next contend that the award of damages as to Anthony's injuries was

excessive. They urge, in substance, that the trial court erred in not granting a new trial on the ground that the award was excessive. It is argued under the facts that "the jury was affected either by bias or prejudice or else misunderstood the court's instructions" in awarding $50,000.00 on account of Anthony's injuries.

The controlling law relating to the review of an award of damages upon a claim of excessiveness has been stated in numerous cases. Michael v. West, 76 N.M. 118, 412 P.2d 549 (1966); Nash v. Higgins, 75 N.M. 206, 402 P.2d 945 (1965); Hanberry v. Fitzgerald, 72 N.M. 383, 384 P.2d 256 (1963); Massey v. Beacon Supply Company, 70 N.M. 149, 371 P.2d 798 (1962); Vivian v. Atchison, Topeka and Santa Fe Railway Company, 69 N.M. 6, 363 P.2d 620 (1961); Montgomery v. Vigil, 65 N.M. 107, 332 P.2d 1023 (1958); Schrib v. Seidenberg, 80 N.M. 573, 458 P.2d 825 (Ct. App.1969); Sweitzer v. Sanchez, 80 N.M. 408, 456 P.2d 882 (Ct.App.1969).

In *Massey* the court stated:

"* * * in determining whether the award is excessive we will not weigh the evidence but only look to see whether the evidence, viewed in the light most favorable to appellee, affords substantial support for the award. * * * If it does, and there is no specific finding of an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact-finder, then the award will not be disturbed on appeal."

The record discloses that Anthony suffered an "ugly laceration on his check." Upon opening Anthony's abdomen to determine the extent of internal injuries the doctor found plural lacerations of the spleen and, therefore, performed a splenectomy. In addition, the doctor discovered hematoma behind the abdominal cavity in the supporting structures and concluded that there was damage and lacerations of the left kidney. Further, as the consequence of internal hemorrhaging, Anthony had to receive four transfusions and subsequently developed an infection in the wound. After the operation Anthony suffered from a collection of fluid on the left side of his chest and an inflammation in that area causing a change to occur to the diaphragm and lungs. During the three weeks that Anthony was in the hospital he suffered a continuous fever up to 102°. He also suffered a brain concussion. One of the doctors testified that the left kidney was nonfunctioning; that it would never function, and that this condition was permanent.

It was further shown that Anthony cannot engage in sports which may result in physical contact because of potential injury to the only remaining kidney. In our view, the evidence affords substantial support for the award and will not, therefore, be disturbed. Cases from other jurisdictions have been brought to our attention by defendants. These cases have received consideration. They are, however, not controlling here. See Sweitzer v. Sanchez, supra.

Defendants urge error in the denial of their requested instruction 19. This instruction proposed that the jury be charged as follows:

"In the event you should return a verdict in favor of plaintiffs, you are instructed that, in fixing damages, you should not speculate upon the possibility that plaintiff Anthony Francis' remaining undamaged kidney may become injured or diseased."

Defendants call attention to the fact that the court did instruct the jury that they should not consider possible future medical and hospital expenses arising from injury or disease to the undamaged kidney because such evidence was too remote and speculative. Defendants say:

"It is difficult to understand why the court would instruct the jury that they should not consider possible future medical expense arising from injury or disease to the undamaged kidney because such evidence was 'too remote and speculative;' but permit them to consider the

same evidence in assessing general damages."

The substance of the argument as we understand it is that under the instruction given, possible future medical and hospital expenses were expressly excluded as a basis for recovery, but the possibility of injury or disease to the undamaged kidney in itself was not excluded as an element of damage. Hence, such possible injury or disease could be considered in assessing general damages.

Damages which might occur by injury or disease to the remaining undamaged kidney were treated as being within a speculative area and not a proper basis upon which to found an award.

The trial court gave the following instruction.

"No. 15—If you should decide in favor of the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the plaintiff to have resulted from the negligence of the defendant:

1. The nature, extent, and duration of the injury, including disfigurement."

\* \* \* \* \* \*

"3. The present cash value of the reasonable expenses of medical care, treatment and services reasonably certain to be received in the future.

Whether any of these elements of damages have been proved by the evidence is for you to determine. Your verdict must be based upon proof and not upon speculation, guess, or conjecture. \* \* \*"

This instruction is in conformity with U.J.I. 14.2 and instructs the jury that the verdict must be based upon proof and not upon speculation, guess, or conjecture. The

proposition presented by defendants' requested instruction No. 19 was adequately covered by the general instruction No. 15, which, as stated, was given by the court. Hence, the denial of the requested instruction was not error. Tapia v. Panhandle Steel Erectors Company, supra; Ortega v. Texas-New Mexico Railway Company, 70 N.M. 58, 370 P.2d 201 (1962); Chapin v. Rogers, 80 N.M. 684, 459 P.2d 846 (Ct.App. 1969); McBee v. Atchison, Topeka and Santa Fe Railway Company, 80 N.M. 468, 457 P.2d 987 (Ct.App.1969).

■ Defendants' final objection is to the refusal of the trial court to charge the jury as requested by them relating to the laibility of the third party defendant (Robert). The requested instruction is in the following language:

"No. 16—The evidence is undisputed that third party defendant, Robert Harrison, participated in the race which resulted in injury to plaintiff, Anthony Francis. Therefore, if you should return a verdict against the defendants you must, at the same time, return a verdict in favor of defendants and against third party defendant for one half of any amount awarded plaintiffs."

This charge appears to be based upon the assumption that third party defendants' liability was established as a matter of law. The record, in our opinion, does not support this contention. As we read the record an issue of fact was present as to third party defendants' liability. The requested instruction was properly refused by the trial court.

The judgment of the trial court should be affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.