**OCEAN BARGE TRANSPORT CO.**

**v.**

**HESS OIL VIRGIN ISLANDS CORP.**

**Mintec/International, a division of Barber-Green Company, Appellant.**

**Nos. 83-3053, 83-3159.**

United States Court of Appeals, Third Circuit.

Argued Dec. 5, 1983.

Decided Feb. 6, 1984.

As Amended Feb. 10, 1984.

William C. Murphy (argued), Craig S. Mielke, Reid, Ochsenschlager, Murphy & Hupp, Aurora, Ill., John E. Lenahan (argued), Bryant, Lenahan & Eltman, Christiansted, St. Croix, V.I., for Hess Oil Virgin Islands Corp.

James L. Hymes III, St. Thomas, V.I., for Mintec/Intern.

Robert H. Ruskin (argued), Christiansted, St. Croix, V.I., for Ocean Barge Transport Co.; Jose F. Sarraga, Old San Juan, P.R., of counsel.

Before HUNTER, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This products liability case arose from the collapse of a crane boom onto the deck of the barge Pavel. The owner and operator of the barge, Ocean Barge Transport Company ("Ocean Barge"), sued the crane's owner-operator, Hess Oil Virgin Islands Corporation ("HOVIC"), and its manufacturer, Mintec/International ("Mintec"), in the District Court of the Virgin Islands, alleging admiralty jurisdiction. After a trial to the bench, the judge concluded that the crane was defective and that Mintec was wholly liable for Ocean Barge's injuries. Mintec appeals. Because we believe that the trial judge erred in his application of the principles of strict liability, we will vacate the judgment below and remand the case.

### I.

In 1977, HOVIC contracted to purchase from Mintec a sulphur loading facility for HOVIC's St. Croix refinery. The facility, which included the crane, was designed to load sulphur from land to ships via conveyors. Mintec contracted to design and prepackage the facility and to supervise its installation. HOVIC was responsible for the daily operation, repair and maintenance of the facility.

On November 20, 1978, the Pavel arrived at the sulphur loading dock of HOVIC's St. Croix refinery to be loaded with sulphur. After the loading had been completed, and as the crane's boom was being lifted up towards its stowed position, the boom collapsed onto the Pavel causing extensive property damage.

On November 22, 1978, personnel from HOVIC and Mintec met to determine the cause of the accident. It was agreed that two of the four steel bolts which fastened one side of the hoist drum assembly to the pillow block base[1] came loose immediately before the accident. It was also agreed that this loosening caused the hoist drum assembly, which was designed to raise and lower the boom by winding and unwinding cable, to be pulled from both the cradle and the pillow block base to which it had been attached. The hoist cable was then able to unwind, allowing the boom to descend rapidly onto the deck of the Pavel. No agreement, however, could be reached on the critical issue of why the two bolts came loose. HOVIC contended that the bolts came loose because of a defect in the crane, while Mintec argued that the entry of a foreign object into the gear box exerted the pressure which caused the loosening.

Ocean Barge originally brought suit only against HOVIC, alleging negligence. HOVIC then filed a third-party complaint against Mintec, proceeding under alternative theories of strict liability and negligence, alleging that the crane had been defectively designed. Ocean Barge subsequently amended its complaint to assert a direct claim against Mintec based upon the allegations set forth in the HOVIC third-party complaint.

The trial lasted from March 15, 1982 to March 19, 1982. After the trial, the judge concluded, "Because the evidence concerning the failed bolts strongly suggests a defect in the design and/or assembly of the machinery at issue, *Mintec bears a substantial burden in seeking to establish that an affirmative act and/or omission on the part of the operators* of the machinery (HOVIC or its agents) was the sole proximate cause of the accident." (emphasis added). Finding that Mintec had adduced no evidence conclusively establishing HOVIC's negligence, the trial judge held Mintec wholly liable for Ocean Barge's damages of $41,415.30. He also found that HOVIC was not at fault and that Ocean Barge was not contributorily negligent. The judge subsequently awarded attorney's fees in favor of Ocean Barge and HOVIC, and against Mintec.

Mintec appeals from this judgment. We believe that the trial judge erred in inferring the existence of a defect solely from the fact of the bolts' failure and consequently in not requiring plaintiff to meet its burden of negating other reasonable explanations for the failure. Accordingly, we will reverse the judgment below and remand the case.

II.

Initially, we note that this action is within the admiralty jurisdiction of the district court.[2] We note also that it is no longer seriously contested that "the legal theories of strict liability in tort now so prevalently applied on land can be applied to suits in admiralty." *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.,* 565 F.2d 1129, 1134 (9th Cir.1977); *see also Lewis v. Timco, Inc.,* 697 F.2d 1252 (5th Cir.1983); *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631, 635 (8th Cir. 1972); *Schaeffer v. Michigan-Ohio Navigation Co.,* 416 F.2d 217, 221 (6th Cir.1969). Section 402A of the *Restatement (Second) of Torts* has been embraced in federal maritime law as the best expression of this doctrine as it is generally applied. *See, e.g., Pan-Alaska Fisheries,* 565 F.2d at 1134; *Lindsay,* 460 F.2d at 636; *Ohio Barge Line,*

1. Although a precise definition of "pillow block base" cannot be derived from the factual record in this case, it is clear that this item is an integral part of the mechanism supporting the hoist drum assembly.

2. The two-part test of *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972), requires (1) a maritime locality of the injury, and (2) a "significant relationship" between the wrong and traditional maritime activity. In this case, the crane's boom fell on the Pavel while the barge was afloat on navigable waters. The maritime locality requirement is thus clearly satisfied. The "nexus" requirement is also satisfied; the loading of cargo for transport by water is certainly a traditional maritime activity.

*Inc. v. Dravo Corp.,* 326 F.Supp. 863, 865 (W.D.Pa.1971); *Soileau v. Nicklos Drilling Co.,* 302 F.Supp. 119, 127 (W.D.La.1969). The doctrine of strict liability in tort is therefore properly applicable in this admiralty case.

III.

█ With those guidelines established, we turn to the determinative issue in this case: whether the trial judge correctly applied the principles of strict liability.[3] He did not. The judge inferred that the crane was defective solely from the fact that its bolts failed. Without more, however, this explanation for the failure was no more likely than other explanations—such as HOVIC's negligence—reasonably raised by the evidence. The judge erred in failing to require the plaintiff to establish by a preponderance of the evidence that a defect existed and in imposing a "substantial burden" upon the defendant "to establish that an affirmative act and/or omission on the part of the operators of the machinery (HOVIC or its agents) was the sole proximate cause of the accident."

█ It is undisputed that a plaintiff proceeding under Section 402A of the *Restatement* bears the burden of proving that the product was defective. *See, e.g., Dalton v. Toyota Motor Sales, Inc.,* 703 F.2d 137, 140 (5th Cir.1983) (applying Louisiana law); *Lantis v. Astec Industries, Inc.,* 648 F.2d 1118, 1120 (7th Cir.1981) (applying Indiana law); *Fabian v. E.W. Bliss Co.,* 582 F.2d 1257, 1260 (10th Cir.1978) (applying New Mexico law). A plaintiff may meet this burden by pointing to some specific dereliction by the manufacturer in constructing or designing the product. But he need not. Courts have been very sensitive to the danger that "[t]here would be little gain to the consuming public if the courts would establish a form of recovery with one hand and take it away with the other by establishing impossible standards of proof." *Lindsay,* 460 F.2d at 639. Of course a defect, like any other fact, may be proven entirely by circumstantial evidence. *See, e.g., Barris v. Bob's Drag Chutes & Safety Equipment, Inc.,* 685 F.2d 94, 101 (3d Cir.1982) (applying Pennsylvania law); *Farner v. Paccar, Inc.,* 562 F.2d 518, 522 (8th Cir.1977) (applying South Dakota law); *Stewart v. Ford Motor Co.,* 553 F.2d 130, 137 (D.C.Cir.1977) (applying District of Columbia law); *Franks v. National Dairy Products Corp.,* 414 F.2d 682, 685–87 (5th Cir.1969) (applying Texas law). More important, however, the plaintiff need not even prove a specific defect; he may discharge his burden by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect. *See, e.g., Lindsay,* 460 F.2d at 638–40; *Daleiden v. Carborundum Co.,* 438 F.2d 1017, 1022 (8th Cir.1971); *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87, 89–90 (3d Cir.1969). Pennsylvania's "malfunction theory," *see Sochanski v. Sears, Roebuck & Co.,* 689 F.2d 45, 50 (3d Cir.1982), is simply a specific application of these general rules of proof. Under this theory "[a] malfunction may itself, *in the absence of abnormal use and reasonable secondary causes,* be sufficient evidence of a defect to make the existence of a defect a jury question." *Knight v. Otis Elevator Co.,* 596 F.2d 84, 89 (3d Cir.1979) (emphasis added). It is incumbent upon the plaintiff to negate other reasonable explanations for the malfunction because "[e]vidence of a malfunction ... is not a substitute for the need to establish that the product was defective. A malfunction is evidence that a defect existed and eliminates only the need to identify a specific failure." *Sochanski,* 689 F.2d at 50. *See also Paoletto v. Beech Aircraft Corp.,* 464 F.2d 976, 982

3. At points, Mintec argues that the trial judge could not have been proceeding under § 402A of the *Restatement* because the judge made no findings that the product was "unreasonably dangerous" or that it reached the user "without substantial change in the condition in which it is sold." While we agree that the trial judge's findings of fact were not as detailed or specific as is desirable, we are nonetheless convinced that the judge applied strict liability principles in finding Mintec liable. The judge's assumption that liability flowed directly from a showing of defect and causation clearly indicates that he was proceeding under strict liability theory.

(3d Cir.1972). Thus, the malfunction theory in no way relieves the plaintiff of the burden of proving a defect: it simply allows him to show that a defect is the most likely explanation for an accident by eliminating other reasonable explanations. *See Stewart,* 553 F.2d at 137; *Wojciechowski v. Long-Airdox Division of Marmon Group, Inc.,* 488 F.2d 1111, 1116–17 (3d Cir.1973); *Franks,* 414 F.2d at 685–87. The plaintiff still must satisfy the burden of proving that a defect is the most likely cause of the accident, and therefore must negate the likelihood of other reasonable causes.

In this case, the evidence fairly suggested two explanations for the failed bolts: the failure could have resulted either from a defect or from HOVIC's negligent operation or maintenance.[4] The plaintiff bore the burden of negating the latter explanation for the failure in order to prove indirectly the existence of a defect. The judge, however, did not require the plaintiff to meet this burden. Instead he inferred a defect from the failed bolts and held that Mintec bore the burden of establishing HOVIC's negligence. In not holding the plaintiff to its burden of proof, the judge erred.

Accordingly, we will reverse the judgment of the district court, and remand this case for proceedings consistent with this opinion. We do not reach the question of whether a court in the Virgin Islands can grant attorney's fees generally in federal question cases or in this admiralty case because there is no longer a prevailing party here. The award of attorneys' fees will be vacated.

4. We note that both Ocean Barge and HOVIC introduced evidence tending to rebut the explanation that HOVIC had negligently operated or maintained the crane. We take no position upon the sufficiency of that evidence to satisfy the plaintiff's burden.