**PHILLIP A. TUTEIN, JR., Plaintiff**

**v.**

**FORD MOTOR COMPANY and METRO MOTORS S.C., INC.,**
**Defendants**

Case No. SX-10-CV-18

Superior Court of the Virgin Islands

Division of St. Croix

March 18, 2016

34

35

WILLOCKS, *Administrative Judge*

**MEMORANDUM OPINION**

(March 18, 2016)

**THIS MATTER** is before the Court on Defendants Ford Motor Company and Metro Motors' (hereinafter, "Defendants") Motion for Summary Judgment filed on October 31, 2014. On February 18, 2015, the Court entered an Order *sua sponte* and granted the parties leave to file a supplemental brief in light of *Government of the Virgin Islands v. Connor*, 60 V.I. 597 (V.I. 2014) and *Banks v. International Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). Neither party filed a supplemental brief. On March 13, 2015, Plaintiff Phillip Tutein, Jr. (hereinafter, "Plaintiff" or "Tutein") filed his opposition along with a Motion for Leave to File Summary Judgment Opposition and Brief In Support Out of Time and his Response to Defendants' Statement of Uncontroverted Material Facts and Counter Statement of Facts. Subsequently, on April 15, 2015, the Defendants filed a reply. For the following reasons, the Court will deny the Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for an Adverse Inference of Spoliation.

**FACTS AND PROCEDURAL HISTORY**

On the morning of November 2, 2008, Tutein was driving a pickup truck owned by his employer the Virgin Islands Water and Power Authority (hereinafter, "WAPA"). (Compl. ¶¶ 5, 7.) Tutein's coworker, Luiscito Bernard Anthony Fredrick[1] (hereinafter, "Frederick") was riding with him in the passenger side of the truck. (Tutein Dep. 36: 3-14.) The truck was a 2000 Ford Ranger designed and manufactured by Defendant Ford Motor Company (hereinafter "Ford") and distributed and sold to WAPA by Defendant Metro Motors, an authorized dealer of Ford products in the Virgin Islands. (Compl. ¶ 5.) Before driving the truck, Tutein performed a cursory inspection of the vehicle and observed that although the vehicle was not brand new, the truck did not appear to be damaged. (Tutein Dep. 53:21-25, 54:1-11.) While driving through Spring Gut Road, on their way to Castle Nugent on Highway 62 (also known as Ha' Penny

---

[1] Luiscito Bernard Anthony Frederick's name is also spelled as Fredericks in the record, but refers to the same person.

Road), both the front and passenger side air bags deployed without any provocation or warning. (Compl. ¶ 7.) (Tutein Dep. 35: 24-25.) It was raining and the terrain was rough and bumpy. (Tutein Dep. 38: 3-9.) Tutein and Fredrick estimate that they were traveling between five (5) and fifteen (15) miles per hour at the time of the incident. (Tutein Dep. 38: 23-24.) (Fredericks Dep. 7: 24-25, 8: 1-2.) The airbag deployed hitting Tutein in his face and upper body injuring his face, head, neck and back. (Compl. ¶¶ 7, 8.) Tutein did not recall hitting a bump or anything hitting the truck before the airbags deployed, but stated that it was rough terrain. (Pl.'s Counter SOF ¶ 6.) (Tutein Dep. 38: 1-7.) However, Frederick recalled that the airbags deployed after falling into "like a bump, pothole." (Frederick Dep. 14: 20-23, 15: 1-11.) After the accident, both Tutein and Frederick exited the truck to inspect for damages, but they did not see any damages. (Pl.'s Counter SOF ¶ 9.)

On November 17, 2008, the truck was sent to Metro Motors for repairs (Affidavit of Bernie Matoo ¶ 6.) Metro replaced the airbag and related components, including the Restraint Control Module (hereinafter, "RCM"). (Affidavit of Bernie Matoo ¶ 7.) After the repairs were completed, the replaced airbags, the related components and the RCM were discarded as a matter of routine and in accordance with the regular business practice of Metro Motors. (Affidavit of Burnett Matoo ¶ 9.) Pursuant to its regular business practice, Metro Motors returns replaced parts to customers only when there is a specific request that the replaced parts be preserved and returned to the customer. (*Id.*) WAPA did not request that Metro Motors maintain or return the previously deployed driver's airbag, related components and the RCM. (Affidavit of Burnett Matoo[2] ¶¶ 8, 9.) At the time of the repairs, WAPA and Metro Motors and Ford were not aware that there was a claim of defect in the vehicle or anticipated litigation. Metro Motors was notified of the pending litigation during a briefing of legal action in July 2010. (Metro Motor's Resp. to Pl.'s Interrog. at 14.) Upon completion of the repairs, the truck was returned to WAPA. (Tutein Dep. 63: 1-10.)

██ Tutein filed the instant action on January 13, 2010 against Ford and Metro Motors. Plaintiff did not plead any claims by name in his two-page Complaint containing ten paragraphs. The Court has taken a

---

[2] Burnett Matoo is the Service Repair Manager at Metro Motors.

liberal view of Plaintiff's Complaint to infer all plausible causes of action since "[p]leadings must be construed so as to do justice." FED. R. CIV. P. 8(e). Based on the following three paragraphs, Tutein's complaint appears to allege design defect, manufacturing defect, and distribution defect:

> The vehicle was defectively designed, manufactured, and distributed in that defective condition to include but not limited to defective airbag systems and/or modules such that the front and passenger airbag deployed without provocation. (Compl. ¶ 6.)
>
> As a result, on November 2, 2008 at approximately 9:00 a.m. Plaintiff was driving on Spring Gut Road when without any provocation or warning the two front airbags suddenly inflated. (Compl. ¶ 7.)
>
> As a result Plaintiff was struck about his face and body with great force from the airbags and suffered injuries to his face and head and injury to his neck and back and other parts of his body. (Compl. ¶ 8.)

In his complaint, Tutein fails to specify which claims are against Ford and Metro Motors respectively. The complaint improperly alleges design defect, manufacturing defect, and distribution defect as to both Defendants. But logically, Metro Motors, the distributor, cannot be liable for manufacturing defect or design defect. Hence, the Court construes the design defect claim and manufacturing defect claim as against Ford. It is unclear whether the defective distribution claim is against Metro Motors or also includes Ford. The Court will not address the defective distribution claim because it was not discussed in the Defendants' Motion. *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012) ("Any argument that is raised for the first time in a reply brief is considered waived, because the [opposing party] will not have a chance to respond.") (collecting cases); *see also Benjamin v. AIG Ins. Co. of P.R.*, 56 V. I. 558, 567-68 (V.I. 2012).

## STANDARD OF REVIEW[3]

A motion for summary judgment shall be granted if the record reflects that: (1) there are no genuine issues (2) as to any material fact and (3) the

---

[3] Both Parties cite to FED. R. CIV. P. 56 as the applicable rule for Defendants' Motion for Summary Judgment. However, in light of the Supreme Court of the Virgin Islands' ruling in *Vanterpool v. Gov't of the V.I.*, "the Federal Rules of Civil Procedure . . . should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other [applicable] procedure." 63 V.I.

moving party is entitled to judgment as a matter of law.[4] The moving party, bears the initial burden of pointing out to the court that there is no genuine issue of material fact[5] — or in other words, an absence of evidence to support Tutein's case.[6] The Court must review the facts and all inferences from the evidence in the light most favorable to the nonmoving party[7] and take the nonmoving party's conflicting allegations as true if properly supported.[8] Tutein, the nonmoving party, then has the burden of setting out specific facts showing a genuine issue for trial.[9] "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."[10] As to materiality, only those facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[11]

Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[12] In other words, Ford and Metro Motors are entitled to summary judgment if, after analyzing all the supporting materials, the Court concludes no reasonable trier of fact could find for Tutein.[13]

---

563, 576 (V.I. 2015). The Court will use the standard of review set forth in the Supreme Court of the Virgin Islands precedents.

[4] *Walters v. Walters*, 60 V.I. 768, 794 (V.I. 2014) (citing *Burd v. Antilles Yachting Servs.*, 57 V.I. 354, 358 (V.I. 2012)); FED. R. CIV. P. 56(a).

[5] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

[6] *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (citations omitted).

[7] *Celotex, supra.*

[8] *Williams*, 50 V.I. at 195; *see also Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 527; *Joseph v. Hess Oil V. I. Corp.*, 54 V.I. 657, 668 (V.I. 2011).

[9] FED. R. CIV. P. 56(e) (internal quotation marks omitted).

[10] *Williams v. United Corp.*, 50 V.I. 191, 195 (V.I. 2008) (quotation omitted).

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

[12] *Anthony v. FirstBank V.I.*, 58 V.I. 224, 228-29 (V.I. 2013) (internal quotation marks omitted).

[13] *Matsushita Elec. Indus., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## DISCUSSION

Defendants contend that they are entitled to summary judgment because (1) Tutein has failed to present any evidence that a specific defect existed in the subject vehicle because he has offered no expert testimony; (2) Tutein is not entitled to a spoliation inference to assist in proving a defect; (3) Tutein cannot establish an inferred defect because the design and manufacture of an airbag system is complex and outside the understanding of lay jurors and Tutein has not offered any expert testimony; and (4) Tutein has failed to establish an inferred defect as he cannot eliminate other possible causes for the accident and his resulting injuries.

Tutein's opposition does not address his design defect and manufacturing claims. Instead, Tutein argues that the Defendant's negligence can be proved by circumstantial evidence through the doctrine of *res ipsa loquitur*.[14] (Pl.'s Opp'n to Mot. for Sum. J. at 5-14.) In support of his negligence theory, Tutein spent an exhaustive amount of time arguing a claim that was never alleged in his Complaint — completely ignoring the strict product liability claims at issue. (*Id.*) Tutein's Complaint only alleges strict products liability claims — no negligence claim. (Compl. ¶ 6.) The doctrine of *res ipsa loquitur* was raised by the Plaintiff for the first time in his summary judgment motion.

■ The Supreme Court of the Virgin Islands (hereinafter "Supreme Court") has recognized that a claim cannot be raised for the first time on a summary judgment motion — it must be contained in the complaint.[15] Moreover, the record reflects that Tutein never amended the Complaint and never moved for leave of court to amend the Complaint. SUPER. CT. R. 8. The Court will not allow Tutein to introduce claims that were never alleged in the Complaint. Ergo, the Court will not address Tutein's *res ipsa loquitur* argument. Last, Tutein argues that he is entitled to a

---

[14] The Court is aware that some states have expanded the application of *res ipsa loquitur* to strict product liability actions. However, Tutein does not argue that *res ipsa loquitur* should be expanded to apply to his strict products liability action. Instead, Tutein argues *res ipsa loquitur* in the negligence context. Application of the doctrine of *res ipsa locquitur* in either the strict products liability context or the negligence context is an issue of first impression in the Virgin Islands. The Court will not address this issue at this time.

[15] *Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 (V.I. 2011) (collecting cases) (internal quotation marks omitted).

41

spoliation inference because Metro Motors failed to preserve the airbags, components and RCM. The two issues before the Court are (1) whether to grant the Defendants' motion for summary judgment on Plaintiff's design defect claim and manufacturing defect claim and (2) whether to grant Plaintiff motion for an adverse inference of spoliation. Each issue will be addressed.

## I. Design Defect Claim and Manufacturing Defect Claim

*Banks* and its progenies require the Superior Court to perform a tripartite test when faced with a common law issue of first impression.[16] After performing an extensive *Banks* analysis, this Court in *Davis v. Hovensa*[17] adopted Sections 1 and 2 of the Restatement (Third) of Torts to analyze the design defect and manufacturing defect claims.

### A. Design Defect

■ Section 1 of the Restatement Third of Torts (hereinafter, "Section 1") addresses liability of a commercial seller or distributor for harm caused by defective products. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1. Section 1 prescribes that "[o]ne engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." *Id.*

Here, Tutein alleged that the front and passenger airbag systems and/or modules of the Ford pickup truck deployed without provocation causing him injury. Thus, Tutein has stated a claim under Section 1.

■ The Defendants argue that although Tutein states a claim under Section 1, there is insufficient evidence to go to the jury that will establish a design defect or a manufacturing defect. Section 2 of the Restatement Third of Torts (hereinafter, "Section 2") provides separate standards of liability for manufacturing defects and design defects. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. a. According to Section 2(b), "[a] product is defective in design when the foreseeable risks of

---

[16] *See Banks, supra* (To determine the common law, the Court must ascertain: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands.")

[17] 63 V.I. 475, 486-487 (V.I. Super. Ct. 2015).

harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(b).

■ Here, Tutein did not provide any evidence of a reasonable alternative design to support his design defect claim. Ergo, Tutein cannot prove a cause of action under Section 2(b).

### B. Manufacturing Defect

■ A manufacturing defect is a physical departure from a product's intended design. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 1, cmt. a. Under Section 2(a), "a product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2(a). A plaintiff who is able to establish specifically the nature and identity of the defect may proceed directly under § 2(a).

■ Here, Plaintiff does not have any expert witnesses to identify the specific defect and the deadline for filing expert disclosures was June 30, 2014. Even if Plaintiff had experts, the airbags, the related component parts, and the RCM were discarded by Metro Motors. Therefore, Tutein will not be able to satisfy Section 2(a). Because Tutein could not meet the requirements under Section 2, the only way a jury could find a defect is by inference of a defect.

### C. Circumstantial Evidence Supporting Inference of Product Defect

When the product unit involved in the harm-causing incident is lost or destroyed in the accident, direct evidence of specific defect may not be available. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3, cmt. b. Section 3 of the Restatement Third of Torts (hereinafter "Section 3"), provides an alternative method for the Plaintiff to establish design defect without having to satisfy the requirements under Section 2. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 3. However, the common law theory of inferred defect to establish a product defect is an issue of first impression in the Virgin Islands. Although this Court previously adopted Sections 1 and 2 of the Restatement (Third) of Torts,

the court must conduct a *Banks* analysis to determine if Section 3 should be adopted. *Banks*, 55 V.I. at 982 (noting that courts generally do not adopt the "Third Restatement" as a whole, but typically consider adopting specific sections).

■ As mentioned *supra*, when ruling on a common law issue of first impression, the Court must balance the following three non-dispositive factors: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands."[18]

### a. Past practices of courts in this jurisdiction

Very few courts in the Virgin Islands have applied Section 3. Before *Banks*, a few District Court cases have applied Section 3. *Mendez v. Hovensa*, L.L.C., 49 V.I. 826, 834 (D.V.I. 2008) (Section 3 applicable where Plaintiffs were unable to prove that water was defective); *see also Bodley v. Foster Wheeler Energy Corp.*, 2011 U.S. Dist. LEXIS 45006, at *9 (D.V.I. Apr. 26, 2011) (citing *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 124 (3d Cir. 1984) (acknowledging that plaintiff, through the use of circumstantial evidence, may establish the defect "by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect")).

### b. Position taken by a majority of courts in other jurisdictions

Several states recognize that a defect may be proven entirely by circumstantial evidence so long as plaintiff shows an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect. *See Ocean Barge*, 726 F.2d at 124. *See Barris v. Bob's Drag Chutes & Safety Equipment, Inc.*, 685 F.2d 94, 101 (3d Cir. 1982) (applying Pennsylvania law); *Farner v. Paccar, Inc.*, 562 F.2d 518, 522 (8th Cir. 1977) (applying South Dakota law); *Stewart v. Ford Motor Co.*, 179 U.S. App. D.C. 396, 553 F.2d 130, 137 (D.C. Cir. 1977) (applying District of Columbia law); *Franks v. National Dairy Products Corp.*, 414 F.2d 682, 685-87 (5th Cir. 1969) (applying Texas

---

[18] *Banks, supra.*

law)). Some courts refer to this Section as "the malfunction doctrine." *See, e.g., Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631, 638-40 (8th Cir. 1972); *Daleiden v. Carborundum Co.*, 438 F.2d 1017, 1022 (8th Cir. 1971); *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87, 89-90 (3rd Cir. 1969); *see Sochanski v. Sears, Roebuck & Co.*, 689 F.2d 45, 50 (3d Cir. 1982).

Moreover, the use of circumstantial evidence to prove vehicle defects is widespread.[19] *See, e.g., Frankel v. Lull Eng'g Co.*, 334 F. Supp. 913, 919 (E.D. Pa. 1971) (finding that circumstantial evidence of a defect in a high-lift loader that flipped over was sufficient to show a defect without testimony by an expert witness); *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.*, 395 So. 2d 991, 995-96 (Ala. 1981) (holding that proof of a tire blow-out on a four and one-half month old tire was not, by itself, sufficient to prove defect in product); *Montoya v. General Motors Corp.*, 1975- NMCA 136, 88 N.M. 583, 544 P.2d 723 (Ct. App. 1975) (overruling judgment notwithstanding the verdict because circumstantial evidence existed of a product defect through expert testimony about the car and plaintiffs' testimony about use); *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St. 3d 1, 523 N.E.2d 489, 496 (1988) (finding that circumstantial evidence of a defect in the electrical system of a burned car was insufficient because the plaintiff failed to eliminate other possible causes such as faulty repair); *Anderson v. Chrysler Corp.*, 184 W. Va. 641, 403 S.E.2d 189, 193 (1991) (overruling a directed verdict for the defendant and noting that circumstantial evidence is sufficient to prove a defect to "the average juror using common knowledge").

### c. The soundest rule for the Virgin Islands

The scope of Section 3 applies to limited cases. Section 3 was intended to apply to cases in which the product fails to perform its manifestly intended function and where the product is lost or destroyed. RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 3, cmt b. Although liability under Section 3 will be limited to specific cases, Section 3 will broaden the scope of strict product liability claims because plaintiffs may bring circumstantial evidence. In other words, plaintiffs

---

[19] COMMENT: Skimming the Trout from the Milk: Using Circumstantial Evidence to Prove Product Defects under the Restatement (Third) of Torts: Products Liability Section 3, Tennessee and Beyond, 68 Tenn. L. Rev. 647, 677 n.232.

will not be barred from asserting claims where the specific defect cannot be identified or the product has been destroyed.

 In a small community with limited resources, in the interest of fairness, the ability to determine the cause of the defect should not control whether a plaintiff could recover. There are many cases where it is difficult for a plaintiff to point to the specific cause of the defect or the product itself has been destroyed. In such instances, it would be unfair and unjust to leave plaintiff with no alternative means of recovery. Since this Court has adopted Sections 1 and 2, the sensible approach is to adopt Section 3 as an alternate means of recovery for plaintiffs who cannot satisfy the requirements under Sections 1 and 2. The Court finds that Section 3 is the soundest rule for the Virgin Islands.

 Section 3 provides:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
>
> > (a) was of a kind that ordinarily occurs as a result of product defect; and
> >
> > (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution. The inference of defect may not be drawn from the mere fact of a product-related accident. *Id.* cmt d.

To satisfy the criteria of Section 3, "the plaintiff must establish by a preponderance of the evidence that the incident was not solely the result of causal factors other than defect at time of sale." RESTATEMENT (THIRD) OF TORTS: PRODUCT LIABILITY § 3, cmt d. Here, the Defendants argue that Tutein has failed to present any evidence that an inferred defect existed in the vehicle. (Defs.' Mot. for Sum. J. at 13.) Defendants contend that Tutein cannot prevail on an inferred defect theory because lay jurors would not be able to comprehend the inner workings of the design and manufacture of an airbag system without expert testimony. (*Id.* at 14-15.) The Court disagrees with the Defendants.

 Section 3 allows an inference of a defect without proof of the specific defect. Hence, expert testimony is not necessary to show whether the airbag was defective. Viewing the facts in the light most favorable to the Plaintiff, the evidence shows that the airbags in the 2000 Ford Ranger

pickup truck deployed without any provocation or warning while the Plaintiff was driving between 5 and 15 miles per hour on a rough and bumpy road. Moreover, according to Tutein's deposition testimony, the truck did not appear to be damaged before or after the incident. Lay jurors who travel the roads of St. Croix could easily determine, using common sense, that airbags should not automatically deploy while driving — even if a vehicle hits a pothole. Therefore, based on the facts of this case, the average juror using common knowledge could find that airbags deploying without provocation is the result of a product defect. The Court finds that a jury could find by a preponderance of the evidence that the unprovoked deployment of the airbags is not solely the result of other causes. Therefore, the Court will deny summary judgment.

## II. Spoliation Inference

Courts have defined spoliation as "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable [sic] litigation.'" *Canton v. Kmart Corp.*, 2009 U.S. Dist. LEXIS 59352, at *2 (D.V.I. July 10, 2009) (quoting *MOSAID Technologies, Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). The spoliation inference is an adverse inference that permits a jury to infer that destroyed evidence might, or would have been unfavorable to the position of the offending party. *Id.* Plaintiff has the burden to prove the spoliation inference by satisfaction of four elements:

> (1) the evidence in question be within the party's control;
>
> (2) there has been actual suppression or withholding of the evidence;
>
> (3) the evidence destroyed or withheld was relevant to claims or defenses; and
>
> (4) it was reasonably foreseeable that the evidence would later be discoverable.

*Bright*, 50 V.I. at 226 (citations omitted). The spoliation inference only arises "when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *Bright*, 50 V.I. at 226 (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96, 19 V.I. 642 (3d Cir. 1983)). A party is obligated to retain evidence when it has notice

that the evidence is relevant to litigation, or when it should have known that the evidence may be relevant to future litigation. *Id.* at 227 (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001)).

 The Court finds that Plaintiff is entitled to a spoliation inference. In the case at bar, Plaintiff claims that he is entitled to the sanction of an adverse inference for spoliation of evidence because Metro Motors allegedly failed to preserve the airbags, components, and RCM. (Pl.'s Opp'n to Mot. for Sum. J. at 16.) First, the court finds that Metro Motors had control over the airbags, components and RCM. Metro Motors could decide whether to keep or discard the replaced parts. Second, upon review of the record, there was no intentional suppression or withholding of the evidence. Metro Motors claims that the airbags and its component parts were disposed of in accordance with its normal business practices. There is no indication that Metro Motor's disposal of the airbags, components, and RCM was done with a desire to suppress the truth.

However, based on the nature of the repairs — an accident involving a WAPA truck — it was reasonably foreseeable that there was a possibility of future litigation. Therefore, Metro Motors had a duty to preserve the airbags, the related components and the RCM.[20] As a result, Plaintiff was prejudiced by the destruction of the airbags, the component parts and RCM because there is virtually no other evidence establishing the dispositive issue.[21] It is clear that the elements necessary for a spoliation inference have been satisfied in this case. From the nature of the repairs and WAPA's request for information about why the airbags deployed, Metro Motors should have known that there would be a possibility of future litigation, and the airbags, the components and the RCM would be relevant to that litigation. Thus, this Court finds that Metro Motors did not fulfill its duty to preserve the airbags, the components and the RCM, resulting in prejudice to Plaintiff. An inference of spoliation is appropriate in this case.

## CONCLUSION

Based on the foregoing analysis, the Court will deny the Defendants' Motion for Summary Judgment. There is an inference of spoliation

---

[20] *MOSAID Technologies, Inc.*, 348 F. Supp. 2d at 336.

[21] *Bright*, 50 V.I. at 228.

inference from Metro Motor's destruction of the airbags, the related components and the RCM. Also, through circumstantial evidence, a jury could infer that the airbags were defective. Ergo, there is a genuine issue of material fact with respect to Plaintiff's design defect and manufacturing defect claims. The Defendants are not entitled to judgment as a matter of law. An Order consistent with this Opinion will be entered by the Court.